## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT AND ARREST WARRANT

I, Mason Posilkin, having been duly sworn, depose and state as follows:

1. I am a Special Agent of the Office of Labor Racketeering and Fraud Investigations ("OLRFI") for the United States Department of Labor ("DOL"), Office of Inspector General ("OIG").

2. This affidavit is submitted in support of a criminal complaint and arrest warrant for **MILEN RADOMIRSKI**.

3. I respectfully submit that probable cause exists to believe that **RADOMIRSKI** has committed violations of 18 U.S.C. §§ 1546 (visa fraud) and 2 (aiding and abetting).

## AGENT BACKGROUND

4. I have been employed in my current capacity since January 2012. I am currently assigned to the Washington, DC Regional Office of OLRFI. I am a graduate of the Criminal Investigator Training Program at the Federal Law Enforcement Training Center in Glynco, Georgia. My responsibilities include the investigation of violations of criminal law, including as they relate to fraud in employment-based visa programs.

5. Since January 2012, I have been participating in an investigation of potential violations of visa and immigration laws by employees of Company A, a pool service company in the District of Maryland that provided lifeguards and pool maintenance to pools in the Washington, D.C. metropolitan area. The investigation has been conducted jointly by Special Agents and Officers of the U.S. Department of State ("DOS"), and the Homeland Security Investigations ("HSI") and Citizenship and Immigration Services ("CIS") sections of the U.S. Department of Homeland Security ("DHS").

6. The statements in this affidavit are based in part on information provided by other law enforcement agents, witnesses, more than one confidential source, federal wage records,



physical and technical surveillance, my own observations, and my experience and background as a Special Agent. Because this affidavit is being submitted for the limited purpose of obtaining a criminal complaint and arrest warrant, I have not included each and every fact known to me concerning this investigation.

## PROBABLE CAUSE

7. From in or about 2003 to in or about August 2013, **RADOMIRSKI** worked for Company A.

8. An H-2B visa was a non-immigrant visa granted to citizens of other countries seeking to work in the United States on a temporary basis. The H-2B non-immigrant visa program permitted U.S. employers to hire foreign workers to come to the United States and perform temporary non-agricultural services or labor on a one-time, seasonal, peak-load, or intermittent basis. From approximately 2006 through 2011, Company A submitted applications for approximately 789 H-2B visas to DOL and CIS.

9. DOL form ETA 9142 ("Application for Temporary Employment Certification") was completed by the employer or its agent and submitted to DOL. The form required the employer or its agent to list, among other things, the number of workers, job description, rate of pay, and location for the work. Appendix B.1 to the form had the employer certify, among other things, that the job opportunity was a bona fide, full-time, temporary position, and additionally that the employer and its agents and/or attorneys had not sought or received payment of any kind from the employee for any activity related to obtaining labor certification, including payment of the employer's attorneys' fees, application fees, or recruitment costs. The form also required the employer to take full responsibility for all information on the ETA-9142, and to sign and attest that all of the information on the form was true and accurate under penalty of perjury.



10. The employer also was required to file with CIS a separate petition commonly known as Form I-129 ("A Petition for Nonimmigrant Worker"), along with the previously-described labor certification notice approved by DOL. On the Form I-129, the employer was required to specify the job in which the foreign national would be employed, the address at which the work would be performed, the wage, the current number of foreign nationals employed, and the employer's gross and net annual income. The employer also was required to sign the Form I-129 petition under penalty of perjury, attesting that the petition and the evidence submitted with it were true and correct. The Form I-129 also stated that the petitioner would notify DHS if an H-2B worker failed to report to work within five days after the start date on the petition or if a worker absconded or was terminated.

11. Pursuant to DOL regulations, the petitioner on the Form I-129 was the only entity allowed to employ the temporary H-2B alien workers. Thus, if the temporary H-2B alien entered the United States and worked for an employer other than the employer that petitioned for the alien's employment, the alien's work authorization and immigration status was rendered invalid.

12. As part of his employment with Company A, **RADOMIRSKI** was tasked with finding international workers for whom Company A could sponsor to work in the United States on H-2B visas and other short-term visas. **RADOMIRSKI**, however, charged certain visa beneficiaries money in exchange for including them on Company A's petitions for H-2B visas. Additionally, it was understood between **RADOMIRSKI** and many of the visa beneficiaries that the beneficiary would not work at Company A, would work at Company A only for a short period of time, or would not work exclusively at Company A. Accordingly, **RADOMIRSKI** knowingly made, or aided and abetted the making of,

- 3 -

false statements in documents required by the immigration laws or regulations prescribed thereunder, including the H-2B visa application, the DOL form ETA 9142 ("Application for Temporary Employment Certification"), and the Form I-129 ("A Petition for Nonimmigrant Worker"), all in violation of 18 U.S.C. §§ 1546(a) and 2.

13. The following examples are derived from witness, informant, and visa beneficiary interviews, as well as a review of documents obtained from **RADOMIRSKI**, Company A, and otherwise on file with the Government.

14. For example, on or about March 17, 2010 and February 11, 2011, **RADOMIRSKI** filed or caused to be filed petitions seeking an H2-B visa for Beneficiary #1. Beneficiary #1 was granted an H-2B visa to work at Company A from April 1, 2010 until October 18, 2010, and a second H-2B visa from February 23, 2011 until October 18, 2011. Beneficiary #1 paid **RADOMIRSKI** $1,000 in cash for each of the two H-2B visas (for a total of $2,000).

15. On or about March 15, 2011, **RADOMIRSKI** filed or caused to be filed a petition a seeking an H2-B visa for Beneficiary #2. Beneficiary #2 was granted an H-2B visa to work at Company A from April 1, 2011 until October 18, 2011. Beneficiary #2 paid **RADOMIRSKI** $600 cash for the H-2B visa, having received a discount because he had referred his friends to **RADOMIRKSI** for their visas. While on the H-2B visa for Company A, Beneficiary #2 continued to work at a restaurant in Washington, D.C.

16. On or about March 15, 2011, **RADOMIRSKI** filed or caused to be filed a petition seeking an H2-B visa for Beneficiary #3. Beneficiary #3 was granted an H-2B visa to work at Company A from April 1, 2011 until October 18, 2011. During this time frame, Beneficiary #3 had no reported wages from Company A, according to state records.

Instead, Beneficiary #3 had reported wages from restaurants located in Florida and Maine.

17. On or about February 11, 2011, **RADOMIRSKI** filed or caused to be filed a petition seeking an H2-B visa for Beneficiary #4. Beneficiary #4 was granted an H-2B visa to work at Company A from February 23, 2011 until October 18, 2011. During this time frame, Beneficiary #4 had no reported wages from Company A, according to state records. Instead, Beneficiary #4 had reported wages from a company located in Bethesda, Maryland.

18. On or about March 15, 2011, **RADOMIRSKI** filed or caused to be filed a petition seeking an H2-B visa for Beneficiary #5. Beneficiary #5 was granted an H-2B visa to work at Company A from April 1, 2011 until October 18, 2011. During this time frame, Beneficiary #5 had no reported wages from Company A, according to state records. Instead, Beneficiary #5 had reported wages from a company located in Florida.

19. On or about January 19, 2011, **RADOMIRSKI** filed or caused to be filed a petition seeking an H2-B visa for Beneficiary #6. Beneficiary #6 was granted an H-2B visa to work at Company A from February 23, 2011 until October 18, 2011. During this time frame, Beneficiary #6 had no reported wages from Company A. Instead, Beneficiary #6 had reported wages from a restaurant located in Reston, Virginia.

20. On or about March 22, 2010, **RADOMIRSKI** filed or caused to be filed a petition seeking an H2-B visa for Beneficiary #7. Beneficiary #7 was issued an H-2B visa to work at Company A from a certain point in time until October 18, 2010. Beneficiary #7 paid **RADOMIRSKI** $1,200 cash for his H-2B visa, and **RADOMIRSKI** told Beneficiary #7 that he did not have to work at Company A while on the H-2B visa.



Consistent with **RADOMIRSKI**'s direction, Beneficiary #7 did not work at Company A during the term of the visa.

21. In total, law enforcement agents believe, based on a review of documents obtained from **RADOMIRSKI**, documents on file with the Government, and interviews of witnesses, informants, and visa beneficiaries, that **RADOMIRSKI** committed visa fraud in 100 or more applications, affidavits, or other documents required by the immigration laws or regulations prescribed thereunder, and conspired with others to knowingly present the same applications, affidavits, or other documents which contained the false statements.

## CONCLUSION

22. For the foregoing reasons, I respectfully submit that there is probable cause to believe that RADOMIRSKI has committed violations of 18 U.S.C. §§ 1546(a) and 2.

Mason Posilkin
Special Agent
United States Department of Labor,
Office of the Inspector General

Subscribed and sworn before me this 13th day of January 2014.

HON. WILLIAM CONNELLY
CHIEF UNITED STATES MAGISTRATE JUDGE